UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT J. SEARLE, individually and as Trustee of the SANJA REALTY TRUST and SUSAN M. SEARLE, individually and as Trustee of the SANJA REALTY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC, d/b/a MR. COOPER,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:21-cv-11962-IT<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM AND ORDER

August 2, 2022

TALWANI, D.J.

Plaintiffs Robert A. Searle and Susan M. Searle, individually and as trustees of the Sanja Realty Trust ("the Searles"), bring this action against Defendant Nationstar Mortgage, LLC, d/b/a Mr. Cooper ("Nationstar"). In their Verified Complaint [Doc. No. 1-2], Plaintiffs allege, inter alia, that Defendant does not have the power of the sale to foreclose upon the property at 9 Prospect Street, Merrimac, MA 01860 (the "Property") and that they are entitled to Quiet Title and damages under Massachusetts Consumer Protection Law and the federal Real Estate Settlement Procedures Act. Now pending before the court is Defendant's Motion to Dismiss [Doc. No. 12].

I.    **Factual Allegations**

On or around December 5, 1989, the Searles became the record owners of the Property[1] as tenants by the entirety. See Compl. Ex. B [Doc. No. 1-3]. On August 25, 2004, the Searles entered into a loan made payable to Nation One Mortgage Company, Inc. ("Nation One") through the execution of a promissory note (the "Note") in favor of Nation One. Compl. ¶ 3 [Doc. No. 1-2]; Compl. Ex. B [Doc. No. 1-3]. As security for repayment of the Note to Nation One, the Searles granted the mortgage on the Property to Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the Lender, Nation One, and its successors and assigns. Compl. ¶ 6 [Doc. No. 1-2]; Compl. Ex. B [Doc. No. 1-3].

On or around May 20, 2011, the Searles entered into a Loan Modification Agreement that included principal and interest, and escrow.[2] Compl. ¶ 11 [Doc. No. 1-2]; Compl. Ex. C [Doc. 1-4]. According to a ledger provided by Nationstar to the Searles, beginning in July 2012, the Searles made monthly payments in accordance with the terms of the Modification Agreement for (1) principal and interest and (2) escrow items, including real estate taxes and insurance costs. See Compl. Ex. J [Doc. 1-11]. On or about November 14, 2016, the Searles transferred the Property to themselves as Trustees of the Sanja Realty Trust. Compl. ¶ 17 [Doc. No. 1-2].

In January 2019, the Searles received an Annual Escrow Account Disclosure Statement ("2019 Escrow Statement") pursuant to the Real Estate Settlement Procedures Act ("RESPA"). See id. at ¶ 25. The 2019 Escrow Statement informed the Searles, inter alia, that beginning on

---

[1] The Complaint [Doc. No. 1-2] attaches documents [Doc. No. 1-5] related to a separate property in Rockport, MA. Those documents are irrelevant to the Complaint [Doc. No. 1-2].

[2] The Modification Agreement identifies Aurora Loan Services, LLC as the "Lender" on the signature line. Compl. Ex. C, 8 [Doc. 1-4]. The document, however, uses the term "Lender" as shorthand for "Lender or Servicer." Id. at 1. There is no evidence in the record as to whether Aurora Loan Services LLC was acting as the Servicer or Lender or whether the loan was ever assigned from the original Lender, Nation One, to another Lender.

February 1, 2019, their monthly payment would increase from $1,166.39 ($660.38 principal and interest; $506.01 escrow) to $1,388.20 ($660.38 principal and interest; $752.82 escrow) due to a projected shortage on the Loan's escrow account. Compl. Ex. J [Doc. 1-11]; see also Compl. Ex. H [Doc. No. 1-9] (stating that Searles paid a principal and interest payment of $660.38).

On January 7, 2019, the Searles called Nationstar to question the escrow charges from the past 12 months and to request that Nationstar discontinue accepting escrow payments. Compl. ¶ 26 [Doc. 1-2]; Compl. Ex. K-2 [Doc. 1-14]. The same day, the Searles made a payment in the amount of $660.38. Compl. Ex. K-2 [Doc. 1-9]. On or about January 23, 2019, the Searles contacted Nationstar by phone because they had not received a response to the Searles' request for termination of the escrow account. Id. The Searles stated that they were "extremely disappointed in Mr. Cooper's inactions in this matter." Id.[3] Between February 3, 2019, and April 1, 2021, the Searles sent multiple written communications to Nationstar regarding an alleged improper accounting. Compl. ¶¶ 27-29 [Doc. No. 1-2]. Beginning on February 3, 2019, the Searles also mailed 33 consecutive monthly payments of $660.38, the amount of the principal and interest only, to Nationstar. Id. at ¶ 30. Unknown to the Searles, Nationstar considered the payments "partial payments," which Nationstar accepted but did not apply to the Searles' account, leaving the Searles' principal in arrears. Id. at ¶¶ 31-32.

On or about July 16, 2019, MERS, as the original mortgagee, purported to assign the mortgage to Nationstar as the new mortgagee on the loan. See id. at ¶¶ 113-114; Compl. Ex. E [Doc. 1-6]; Mem. of Law in Support of Def's Mot. to Dismiss ("Memorandum") Ex. E [Doc. No.

---

[3] Nationstar claims that on January 8, 2019, it informed the Searles, inter alia, that the escrow account could not be bifurcated from the loan pursuant to the terms of the Modification Agreement. See Memorandum Ex. D [Doc. 13-4]. The court declines to consider this document as it was not attached to or incorporated in the Complaint [Doc. No 1-2] and, accordingly, is not properly before the court on a motion to dismiss.

3

13-5]. On or about October 13, 2019, Nationstar sent the Searles notice that they had an overdue balance of $9,807. Compl. ¶ 37 [Doc. No. 1-2]; Compl. Ex. J [Doc. No. 1-11]. The notice stated that partial payments would not be credited to the loan until the full monthly mortgage payments were received. Compl. Ex. J [Doc. No. 1-11]. On or about November 12, 2019, Nationstar recorded an Affidavit Regarding Notes Secured by a Mortgage to be Foreclosed with the Registry ("35B Notice"). Compl. Ex. E [Doc. No. 1-6]. On or about November 26, 2019, the Searles' former counsel sent a letter to Nationstar's counsel, Korde & Associates, P.C., asking for a full accounting on the loan in order to have the account "cleared up, and have the homeowner return to a current status." Compl. Ex. H [Doc. No. 1-9]; Compl. ¶ 50 [Doc. No. 1-2]. Nationstar's counsel received the written communication on November 28, 2019. Compl. ¶ 53 [Doc. No. 1-2]; Compl. Ex. I [Doc. No. 1-10].

In January 2020, the Searles filed a pro se Complaint and Motion for Preliminary Injunction in the Essex Country (Lawrence) Superior Court. Compl. ¶ 46 [Doc. No. 1-2], CA No. 2077cv00025 (see Compl. Ex. K [Doc. No. 1-12]). The Searles later dismissed the action without prejudice. Compl. ¶ 47 [Doc. No. 1-2]. Subsequently, the Searles received a 2021 Notice of Foreclosure Auction sale that is the subject of the Complaint. Id. at ¶ 48.

On October 7, 2021, Nationstar acknowledged that it had received the November 26, 2019 communication at the time it was sent. Id. at ¶ 53; Compl. Ex. I [Doc. No. 1-10].  On or about October 18, 2021, Nationstar replied to the Searles' November 26, 2019 letter, stating that the account was referred to foreclosure on July 1, 2019, and that Nationstar was unable to remove the escrow account and bring the loan current. See Compl. Ex. J [Doc. No. 1-11]. The letter stated that the postponed foreclosure was rescheduled for December 2, 2021. Id. Sometime later, Nationstar agreed to postpone the Foreclosure Sale. Compl. ¶ 52 [Doc. No. 1-2].

## II. Procedural Background

On November 19, 2021, the Searles filed a <u>Complaint and an Emergency Motion for Preliminary Injunction</u> ("Motion for PI") with the Essex County Superior Court. Compl. Ex. M [Doc. No. 1-16], CA. No. 2177CV01141. On December 6, 2021, Nationstar removed the action from the Superior Court. <u>See</u> Notice of Removal [Doc. No. 1]. On January 21, 2022, Nationstar filed a motion to dismiss the complaint [Doc. No. 12].

## III.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Id.</u> at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Moreover, "an adequate complaint must include not only a plausible claim but also a plausible defendant." <u>Penalbert-Rosa v. Fortuno-Burset</u>, 631 F.3d 592, 594 (1st Cir. 2011).

In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" <u>Lydon v. Local 103, Int'l Bhd. of Elec. Workers</u>, 770 F.3d 48, 53 (1st Cir. 2014) (quoting <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original)); <u>see also</u>

5

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint" (internal quotations and original alterations omitted)). If other matters outside the pleadings are presented to the court, the court may exclude such matters or may treat the motion as one for summary judgment, with all parties given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

**IV.   Discussion**

The Searles allege, inter alia, that (1) Nationstar did not have authority to enforce the power of sale because Nationstar was neither in possession of the right to enforce the Note as an owner or agent nor was it in possession of a valid assignment of the Note; (2) Nationstar violated the Real Estate Settlement Procedures Act by not responding to the Searles' November 26, 2019 communication within the statutory deadline; (3) Nationstar violated Massachusetts consumer protection laws by failing to supply information regarding the alleged misallocation of their payments; and (4) the Searles are entitled to quiet title under G.L. c. 240 §§ 6-10.[4]

    A.   *Power of the Sale Under G.L. c. 244 § 14 (Count I)*

The Searles seek a declaratory judgment that Nationstar did not have the power to bring a foreclosure action against the Property because it did not comply with Massachusetts General Law c. 244 § 14. Specifically, the Searles allege that Nationstar is not the valid mortgagee of the loan with the power of the sale. See Compl. ¶ 64 [Doc. No. 1-2]. Further, they allege that Nationstar neither was in possession of the underlying Note nor was acting as an agent for

---

[4] The Searles have voluntarily withdrawn Count II of their complaint, which alleged that Nationstar was not compliant with its duty under G.L. c. 244 § 35B to examine the value of the loan and the Searles' ability to pay. See Opposition [Doc. No. 21].

Lender, and thus Nationstar did not have the power to enforce the Note through foreclosure proceedings. Id. at ¶ 65. Nationstar contends that the Searles have not plausibly alleged that Nationstar is not the valid mortgagee with the power of the sale. See Memorandum 8-12 [Doc. No. 13].

"Foreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it." U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 655, 941 N.E.2d 40 (2011) (Cordy, J., concurring). Thus, a foreclosure action may be considered void where, for example, "valid legal title was never assigned to the foreclosing entity." Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 290-91 (1st Cir. 2013) (citing Ibanez, 458 Mass. at 647); see Chace v. Morse, 189 Mass. 559, 561, 76 N.E. 142 (1905) (holding that efforts to make a sale without proper "jurisdiction and authority" render the sale invalid).

As a title state, a mortgager in Massachusetts surrenders legal title to a property when they borrow money to purchase a home. See Dolliver v. St. Joseph Fire & Marine Ins. Co., 128 Mass. 315, 316 (1880). What results is a promissory note and a mortgage, which may not necessarily be held by the same entity. Lamson & Co. v. Abrams, 305 Mass 238, 245, 23 N.E. 2d 374 (1940) ("The holder of the mortgage and the holder of the note may be different persons."). In these situations, the legal interest in the mortgage can be separated from the beneficial interest in the note. See Culhane, 708 F.3d. at 292 ("In other words, the note is the beneficial interest and the mortgage is the legal interest."); see Black's Law Dictionary (11th ed. 2019) (defining a beneficial interest as a "right or expectancy in something"). When these two interests are split between different parties, Massachusetts law envisions a type of equitable trust where the mortgagee holds bare legal title for the noteholder. See Culhane, 708 F.3d. at 292; Ibanez, 458

Mass. at 651-54. Thus, the mortgagee holds a legal interest, and the noteholder holds the beneficial interest. See Culhane, 708 F.3d at 293; Eaton v. Fed. Nat. Mortg. Ass'n, 462 Mass. 569, 576, 969 N.E.2d 1118 (2012). Because these two interests can be separated, the transfer of a note does not automatically transfer the mortgage. See Barnes v. Boardman, 149 Mass. 106, 114 (1889); Eaton, 462 Mass. at 576.

Under Massachusetts General Law c. 244, § 14, a mortgagee or a person authorized by the power of sale may foreclose upon a property upon a breach of condition of the underlying mortgage. GL c.183 § 21 (the "statutory power of sale" can be exercised by "the mortgagee or his executors, administrators, successors, or assigns."); see Ibanez, 458 Mass. at 648. This court has interpreted a mortgagee to be a "person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." Eaton, 462 Mass. at 571, 584. However, the mortgagee need not have physical possession of the note to have the power of the sale needed to initiate foreclosure. See id. at 586, 589 (holding that under GL c. 244 §§ 11-17C, and GL c. 183 § 21, an authorized agent of the note holder may foreclose upon a property even though they do not hold the note or physically possess the note themselves, so long as they are acting as an agent for the noteholder with the beneficial interest.). A mortgagee may also validly assign its power of the sale through an order of assignment. Ibanez, 458 Mass. at 652. Thus, a mortgagee with the power to foreclose must hold the mortgage and either hold the note or act on behalf of the note holder. See Eaton, 462 Mass. at 584.

The Searles contend that Nationstar does not have the power of sale for two reasons. First, the Searles assert that Nationstar is not a valid mortgagee because MERS, the original

mortgagee, did not correctly assign the mortgage. Second, the Searles assert that Nationstar was neither in valid possession of the note nor acting as the agent of the noteholder.[5]

Through a Security Instrument and underlying Note dated August 25, 2004, the Searles entered in a mortgage agreement. Compl. Ex. B [Doc. 1-3]. Under that agreement, the lender and noteholder was Nation One and the mortgagee was MERS. Id. The Security Instrument granted MERS the power of sale for the Property as a "nominee for [Nation One] and [Nation One's] successors and assigns." Id.; see also Culhane, 708 F.3d at 290 (holding that it is uncontested that "a mortgagee has the authority to exercise the statutory power of sale."). Where MERS is designated as a mortgagee "solely as a nominee" for the Lender and its successors and assigns, MERS "holds title for the owner of the beneficial interest." Culhane, 708 F.3d at 293 (citing Morrison v. Lennett, 415 Mass. 857, 859-61, 616 N.E.2d 92 (1993)). Thus, at the time of origination, MERS held legal title to the Property with power of the sale as the nominee of lender Nation One. See Eaton, 462 Mass. at 572.

On July 16, 2019, MERS executed a document purporting to assign the mortgage to Nationstar. Compl. Ex. E [Doc. No. 1-6]. This assignment was recorded in the Essex County (Southern District) Registry of Deeds in Book 37688, Page 71. Id. Barring a restrictive covenant to the contrary, a mortgagee may assign the mortgage to another party by a writing signed by the assignor. Culhane, 708 F.3d at 292; Morrison, 415 Mass. at 616. This Circuit has held that "a

---

[5] The Searles cite to Thompson v. JPMorgan Chase Bank, N.A., 486 Mass. 286, 158 N.E.3d 35 (2020), for the proposition that applicable law supersedes a conflicting term in the mortgage document. In that case, the Supreme Judicial Court held that a less-restrictive G.L. c.244 § 35A notice governed the timing of when a plaintiff could redeem their mortgage prior to a foreclosure sale and was thus not deceptive or misleading. Thompson, 486 Mass. at 288. Here, however, the Searles do not indicate what "applicable law" should have primacy over the terms of the Mortgage.

mortgage contract that names MERS ... as nominee for [Lender] and [Lender]'s successors and assigns does suffice to make MERS the mortgage holder and thus authorizes MERS to assign the mortgage on behalf of the lender to the lender's successors and assigns." Dyer v. Wells Fargo Bank, N.A., 956 F.3d 62, 66 (1st Cir. 2020) (internal citation omitted) (clarifying that "Eaton in no way suggested that MERS's status as a nominee was insufficient to permit it to hold or assign a mortgage to a successor or assign of the lender."); see also Culhane, 708 F.3d 282.

The record provided by the Searles reflects that MERS assigned the mortgage to Nationstar in July 2019. See Compl. Ex. E [Doc. No. 1-6]. Although the Searles allege that the Defendant "intentionally and wrongfully" caused the execution of the assignment, see Compl. ¶ 67 [Doc. No. 1-2], the Searles have alleged no facts to support this conclusory statement. Further, their argument that the mere designation of MERS as a "nominee" renders the assignment invalid is incorrect as a matter of Massachusetts law. Although the Searles note inconsistencies within the documentation of the assignment of the loan,[6] they have not submitted a plausible claim that the assignment of the mortgage was invalid.

Second, the Searles allege that Nationstar does not have standing to foreclose because it was not the agent of the note holder nor in physical possession of the note. Compl. ¶ 58, 74 [Doc. No. 1-2]. However, the Searles have not demonstrated the plausibility of this argument. This circuit has established that physical possession of the note is not required. Eaton, 462 Mass. at 584. Even more, at the motion to dismiss stage, it is the Searles' burden, not Nationstar's, to

---

[6] For example, the October 2019 35B/C Affidavit contains language that Nationstar is the "servicer for the mortgage loan that is the subject of the action." Compl. Ex. E [Doc. No. 1-6]. However, that same affidavit also states that Nationstar is both the "Mortgagee" and the "authorized agent of the holder of the promissory note secured by the Mortgage." Id.


"allege sufficient facts to plausibly state a claim that Defendant does not own their mortgage." Rice v. Wells Fargo Bank, N.A., 2 F.Supp.3d 25, 35 (D. Mass. 2014).

In fact, the contractual language accompanying the complaint suggests that Nationstar, as the assigned mortgagee, did in fact have the power to foreclose as an agent of the noteholder. Under the original 2004 Security Instrument, MERS had the power of the sale. Compl. Ex. B [Doc. No. 1-3] ("Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successor and of MERS, with power of sale, [the Property]." The 2011 Modification similarly states that "[i]n cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right[] to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property[.]" Compl. Ex. C 6 [Doc. No. 1-4]. The November 35B/C Affidavit, which was recorded in the Essex County (Southern District) Registry of Deeds on November 12, 2019, states that Nationstar is "the authorized agent of the holder of the promissory note secured by the Mortgage." Compl. Ex. E [Doc. No. 1-6]; see Lamson v. Chase Home Fin., LLC,87 Mass. App. Ct. 1102, 24 N.E.3d 1060 (2015) (holding that plaintiff had not shown that the defendant was not the holder of the note at the time of foreclosure proceedings based on an uncontested Section 35C affidavit); see McAllister v. Countrywide Home Loans, Inc., No. CV 16-10911-GAO, 2017 WL 1173925, at *13 (D. Mass. Mar. 29, 2017) (granting a motion to dismiss where a section 35B/C affidavit was "sufficient to establish that [the defendant] properly holds the promissory note and has the authority to foreclose.").

In sum, the Searles have not plausibly alleged that Nationstar did not have the power of the sale to foreclose upon the property. As such, Count I must be dismissed for failure to state a claim.

B.      *RESPA Violation (Count IV)*

The Searles allege that Nationstar violated RESPA when it failed to respond to their November 26, 2019 qualified written communication. Compl. ¶¶ 117-126 [Doc. No. 1-2]. They allege that this delay resulted in injury because they were unable to receive an accurate accounting of the loan's outstanding balance for nearly two years. Id. Nationstar contends that the alleged injury was the result of the Searles' failure to pay the complete payment, and not Nationstar's failure to comply with RESPA. Memorandum 16 [Doc. No. 13].

RESPA, which was enacted to increase foreclosure disclosures to borrowers, requires servicers of federally related mortgage loans to acknowledge receipt of a qualified written request[7] from the borrower within 5 days. 12 USCA § 2605(e). The servicer must then respond to the qualified written request within 30 days from receipt. Id. "To state a claim under RESPA pursuant to 12 U.S.C. § 2605, a plaintiff must show (1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred actual damages as a consequence of the servicer's failure. As an alternative to the second requirement, a plaintiff may plead statutory damages, which requires a 'showing of a pattern or practice of noncompliance by the servicer.'" Dyer v. Cap. One, N.A., 496 F. Supp. 3d 554, 562 (D. Mass. 2020) (quoting

---

[7] A qualified written request includes written correspondence that "(i)includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C.A. § 2605(e)(1)(B)

Afridi v. Residential Credit Sols., Inc., 189 F. Supp. 3d 193, 200 (D. Mass. 2016)) (internal quotations and citations omitted).

From February 2019 through November 2019, the Searles and their counsel contacted Nationstar through various written requests regarding the alleged escrow overages on the account. Compl. ¶¶ 21-43 [Doc. No. 1-2]. In a later dated November 26, 2019, the Searles' counsel sent a written communication to Nationstar requesting an accounting of the loan for the previous two years. Compl. Ex. H [Doc. No. 1-9]. On October 7, 2021, Nationstar sent an acknowledgement that it had received the communication on November 28, 2019. Compl. ¶ 53 [Doc. No. 1-2]; Compl. Ex. I [Doc. No. 1-10]. On October 18, 2021, Nationstar responded further, apologizing for the delay and admitting error under RESPA. Compl. ¶¶ 54-55 [Doc. No. 1-2]; Compl. Ex. J [Doc. No. 1-11].

Nationstar concedes that it did not respond to the Searles' November 26, 2019 letter within the statutory timeframe, but contends that Nationstar's failure to respond to the communication did not result in actual injury. "In order to plead 'actual damages' sufficiently, the plaintiff must allege specific damages and identify how the purported RESPA violations caused those damages." Okoye v. Bank of New York Mellon, No. CIV.A. 10-11563-DPW, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011). In Okoye, the court found that the plaintiff had not sufficiently pleaded actual damages stemming from defendant's alleged failure to respond to written communications for accounting documentation. Id. In that case, the plaintiff's complaint merely claimed "unspecified" damage predominantly related to fees and charges accumulated prior to the request for information. Id. On the other hand, the court in Afridi found that a plaintiff sufficiently pleaded actual damages where he claimed that "he suffered a loss of equity

13

in his property, increased mortgage arrears, damage to his credit, stress and anxiety due to the increased risk of losing property and costs and legal expenses." Afridi, 189 F. Supp. 3d at 200.

The Searles allege that the nearly two-year delay between the November 26, 2019 communication and Nationstar's responses in October 2021 left them without an accurate accounting for the $9,807.97 outstanding balance on their account. Compl. ¶ 126 [Doc. No. 1-2]. Although the Searles knew they were only making partial payments, they did not necessarily know how those payments were being applied. See id. at ¶ 102. The Searles sent the written communication shortly after receiving the initial threat of foreclosure in November 2019 in an attempt to identify the source of the account arrears. Id. at ¶ 36-39. Like in Afridi, the Searles have claimed that the lack of accounting prevented them from knowing the "basis of the claimed outstanding balance" on the loan, which eventually led to the instant action. Id. at ¶ 126. The Searles have sufficiently pled plausible injury caused by the alleged delay by Nationstar in responding to the November 26, 2019 letter.  For these reasons, Nationstar's motion as to the RESPA claim is DENIED.

    C.    *Violation of CL c. 93A (Count IV (second))* [8]

The Searles allege that Nationstar engaged in unfair or deceptive practices insofar as (1) Nationstar accepted the Searles' monthly payments and diverted them without notice and (2) Nationstar "willfully ignored" the Searles' request for information. Compl. ¶¶ 100-101 [Doc. No. 1-2]. They allege that they were proximately harmed by Nationstar's actions. Id. at ¶¶ 101-103.

"To state a claim under the consumer protection statute, [Mass. Gen. Laws ch. 93A, § 9], a plaintiff must allege facts sufficient to establish four elements:

---

[8] The Complaint [Doc. No. 1-2] lists both the Section 93A claim and the RESPA claim as "Count IV."

first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury."

Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018).

In determining whether an act is "unfair" within the meaning of the statute, courts consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers . . . ." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596, 321 N.E.2d 915 (1975)). An act is "deceptive" for these purposes "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Lowell Gas Co. v. Att'y Gen., 377 Mass. 37, 51, 385 N.E.2d 240 (1979). Specifically, for an act to be deceptive, "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 72 (1st Cir. 2020) (quoting In re International Harvester Co., 104 F.T.C. 949, 1056 (1984)) Additionally, because a claim of deception involves fraud, "Rule 9(b) requires that plaintiff 'to specifically plead the time, place, and content of [the] alleged false representation[s]' underlying the intentional misrepresentation and Chapter 93A claims." O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 462 (D. Mass. 2018) (quoting Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017)).

The Searles' first Section 93A claim is that Nationstar improperly applied their payments to the escrow account without notice. Compl. ¶ 100 [Doc. No. 1-2]. They allege that this

15

misallocation of funds caused the loan principal account to be in arrears, leading to foreclosure proceedings. Id. at ¶ 31. Under the terms of the Searles' Mortgage Agreement, all periodic payments accepted and applied by the Lender are to be applied in the order of (1) interest due under the note, (2) principal due under the note, and (3) escrow items. Compl. Ex. B [Doc. No. 1-3]. The Searles claim that Nationstar should have applied their partial payments in this order, and the failure to do so violated Section 93A. See 940 C.R.R. 8.00 (Under Massachusetts law, it is "an unfair or deceptive act or practice for a lender to fail to disburse funds in accordance with any commitment or agreement with the borrower.")

Conversely, Nationstar alleges that it was under no obligation to apply partial payments at all. Memorandum 17-20 [Doc. No. 13]. Under the Mortgage Agreement, a "Lender may accept any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current . . . but is not obligated to apply such payments at the time such payments are accepted . . . . Lender may hold such unapplied funds until the Borrower makes payment to bring the loan current." Compl. Ex. B [Doc. No 1-3].[9] The Searles do not contest that Nationstar did not apply the payments, even though it accepted them. Compl. ¶¶ 31-32 [Doc. No. 1-2]. If Nationstar had applied the partial payments, there would exist a plausible claim that Nationstar violated the terms of the mortgage. And Plaintiffs arguably could assert the failure to either apply the money or return it within a reasonable period of time amounts to a breach of contract. However, while a failure to apply the payments in the correct order under the terms of the mortgage or to act in a reasonable period of time may amount to a breach of contract claim, it

---

[9] However, if the borrower does not make the loan current within a reasonable period of time, "Lender shall either apply such funds or return them to Borrower" and in any event, "such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure." Compl. Ex. B [Doc. No. 1-3].

16

does not rise to the level of a Section 93A claim. Where the assignment of payments did not violate any term in the agreement between the Searles and Nationstar, the Searles do not sufficiently allege that such acceptance of payments constitute a plausible claim under Section 93A.

Second, the Searles allege that Nationstar's failure to respond to their November 26, 2019 request for information for nearly two years is an unfair or deceptive practice under Section 93A. Id. at ¶¶ 101-102. In response, Nationstar frames this lag as an "administrative oversight" that does not rise to the level of an unfair or deceptive practice. Memorandum 18 [Doc. No. 13].

"[A] negligent act standing by itself does not give rise to a claim under c. 93A. . . . There must in addition be evidence that the negligence was or resulted in an unfair or deceptive act or practice." Patterson v. Christ Church in City of Bos., 85 Mass. App. Ct. 157, 163–64, 6 N.E.3d 1099 (2014) (internal citation and quotation marks omitted). However, an act is a per se violation of Section 93A if it "fails to comply with existing statutes, rules, regulations or laws…intended to provide the consumers of this Commonwealth protection." 940 C.M.R. 3.16.

Taking the facts alleged as true, the Searles have sufficiently pleaded that Nationstar violated Section 93A by not complying with RESPA. There remains a plausible question as to whether the failure to respond caused the Searles' injury. Thus, Nationstar's motion is DENIED only as to whether Nationstar's delayed response to the November 26, 2019 communication violated Section 93A.

D.     *Quiet Title (Count III)*

The Searles claim they are entitled to Quiet Title under G.L. c.240 §§ 6-10 because they are record owners in current, continuous possession of the Property. Compl. ¶¶ 110-115 [Doc. No. 1-2]. However, "[a] mortgagor lacks standing to bring a quiet title action as long as the

mortgage remains in effect." Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017). In Massachusetts, a quiet title action "cannot be maintained unless both actual possession and the legal title are united in the plaintiff." Daley v. Daley, 300 Mass. 17, 21, 14 N.E.2d 113 (1938). Upon the execution of the mortgage, the Searles only maintained equitable title to the Property, while the legal title went to the mortgagee, as discussed above. See Bevilacqua v. Rodriguez, 460 Mass. 762, 774, 955 N.E.2d 884 (2011). The Searles allege that the assignment of the mortgage, which gives legal title to the property, is void. Compl. ¶¶ 113 [Doc. No. 1-2]. However, for the reasons discussed above, the Searles have not made a sufficient claim to show that the 2019 assignment of the mortgage from MERS to Nationstar was invalid. See Section IV.A. As such, Count III must be dismissed for failure to state a claim.

## V.  Conclusion

For the foregoing reasons, Nationstar's Motion to Dismiss [Doc. No. 12] is GRANTED as to Count I and Count III. The Motion to Dismiss [Doc. No. 12] is DENIED IN PART as to Count IV (Section 93A). The Motion to Dismiss [Doc. No. 12] is DENIED as to Count IV (RESPA).

IT IS SO ORDERED.

August 2, 2022                                                          /s/ Indira Talwani
                                                                        United States District Judge